UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN EDWIN KUHNEL,<br><br>Defendant. | Criminal No. 17-158(1) (JRT/BRT)<br><br>MEMORANDUM OPINION<br>AND ORDER |

Gregory G. Brooker, Acting United States Attorney; Manda M. Sertich, Assistant United States Attorney; and Miranda Dugi, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Robert M. Paule, **ROBERT M. PAULE, PA**, 920 Second Avenue South, Suite 975, Minneapolis, MN 55402, for defendant.

Defendant John Kuhnel moves to suppress evidence obtained from a warrantless search of his vehicle, which led to the recovery of a laptop containing child pornography. On November 28, 2017, Magistrate Judge Becky R. Thorson issued a Report and Recommendation (R&R) recommending that Kuhnel's motion be denied because the probation officer had a reasonable suspicion that Kunhel was violating the terms of his supervised release. After an independent review of the files, records, and proceedings, the Court will overrule Kuhnel's objections, adopt the R&R, and deny Kuhnel's motion to suppress.

## BACKGROUND

**I.  KUHNEL'S CONVICTION AND SUPERVISED-RELEASE CONDITIONS**

In 2010, Kuhnel was convicted of second-degree criminal sexual conduct after engaging in sexual contact with his then-three-year-old daughter. (Hr'g Tr. at 7:17-9:10, Sept. 28, 2017, Docket No. 35.) Kuhnel's sentence was stayed for five years, and he was placed on probation. (*Id.* at 9:12-14.) Ultimately, Kuhnel violated the conditions of his probation and was given an executed sentence of 36 months. (*Id.* at 11:6-15.) He served two-thirds of his sentence before being released on September 2, 2014. (*Id.* at 11:14-20, 13:25-14:16, 17:1-3.) He was placed on supervised release for the remaining third of his sentence. (*Id.*) Concurrent with his supervised-release term, Kuhnel began serving a mandatory ten-year conditional-release period. (*Id.* at 11:18-20, 14:12-15:6.)

The same conditions applied to Kuhnel's supervised release and conditional release. (*Id.* at 14:12-15:6.) Special Condition No. 2 states that Kuhnel "[m]ust not purchase or possess or allow in his or her residence . . . . sexually explicit materials, nor enter an establishment that has sexual entertainment as its primary business as determined by the agent/designee." (*Id.* at 19:12-18.) Special Condition No. 3 states that Kuhnel "[m]ust not own or operate any device that allows for Internet capabilities or access to the Internet through any technology or third party, call/sex/chat/dating or social lines without documented approval of the agent/designee. If Internet access is approved by the agent, must not access sex/chat/social/dating websites/blogs without prior approval of agent/designee." (*Id.* at 19:23-20:4.) Relatedly, Special Condition No. 4 states that

Kuhnel "[m]ay not create/use any media method for personal contact and/or advertisement for solicitation purposes without prior written approval of the agent/designee. If Internet access is approved by agent, must access sex/chat/social/dating websites/blogs without prior approval of the agent/designee." (*Id.* at 21:11-18.) Finally, Special Condition No. 13 specifies, "The offender will submit at any time to an unannounced visit and/or search of the offender's person, vehicle or premises by the agent/designee." (*Id.* at 26:9-13.)

Kuhnel did not have permission to access social or dating websites, such as Facebook or Craigslist. (*See id.* at 20:5-21:22.) Kuhnel was provided access to electronic devices – namely a cellphone and a work computer – under strict conditions. (*Id.* at 21:24-22:11.) His cellphone was monitored with software that allowed the probation officer to view Kuhnel's use of his cellphone. (*Id.* at 22:3-11.) Kuhnel was not permitted to use his work computer for personal use. (*Id.* at 22:12-14.) Additionally, Kuhnel was required to provide his usernames and passwords to the probation officer so that the officer could manually view his accounts. (*Id.* at 22:18-25.) Kuhnel requested to use services like Facebook on multiple occasions but this permission was never granted. (*Id.* at 23:23-24:22.)

## II.  VIOLATION OF CONDITIONS

In June 2016, the monitoring software detected that Kuhnel had taken photos of his genitals and was sending those photos to an unknown party. (*Id.* at 30:13-25.) The

probation officer confronted Kuhnel about the photos, and Kuhnel admitted that he had violated the terms of his release in possessing the photos. (*Id.* at 31:4-7.)

In November 2016, the probation officer found e-mail evidence that Kuhnel was accessing websites that he did not have authorization to access, such as Craigslist and Facebook. (*Id.* at 31:12-32:1.) In the sent folder of his e-mail, the probation officer found an e-mail related to Craigslist in which Kuhnel offered to "entertain" a female who said "she was going to be in the area." (*Id.* at 32:11-18.) The probation officer also found e-mails suggesting that he had made a post from a Facebook account. (*Id.* at 32:19-33:2.) The probation officer was able to find a Facebook account with Kuhnel's picture and name. (*Id.* at 33:7-9.)

On November 29, 2016, the probation officer confronted Kuhnel about concerns that Kuhnel was violating the conditions of his release. (*Id.* at 34:1-7.) Kuhnel admitted that he had used Facebook on his work computer. (*Id.* at 34:7-18.) Kuhnel initially denied that he had contacted someone on Craigslist but eventually wavered and stated that he had. (*Id.* at 35:4-12.) After the probation officer discussed his concerns with Kuhnel, the probation officer asked to search Kuhnel's vehicle. (*Id.* at 36:14-17.) The probation officer testified as to the reasons he decided it would be appropriate to search Kuhnel's vehicle:

> [T]here was a lot of inconsistencies with what he was telling me and what I was seeing on the accounts. I believe I had actually seen a recent update through his e-mail account that was in close proximity to the time he arrived at my office indicating he might have something in the vicinity. . . .

> I believed there was a probation violation, a supervised release violation, and I just wanted to get more evidence that – to determine what extent that violation – to what extent the violation existed, I guess.

(*Id.* 37:14-38:4.)

According to the probation officer, Kuhnel "did not argue" or "put up any type of resistance" about searching his vehicle. (*Id.* at 36:19-20.) Kuhnel opened the vehicle. (*Id.* at 38:14-21.) The probation officer asked whether there were any electronics inside the vehicle, and Kuhnel indicated that there were. (*Id.* at 38:17-19.) The probation officer retrieved two computers from the vehicle: Kuhnel's work computer and a second computer that Kuhnel claimed was a client's computer. (*Id.* at 39:1-10.) The probation officer notified Kuhnel that they were going to take the computers and his cellphone to look through them. (*Id.* at 39:21-24.) Kuhnel did not protest the taking of his computers or cellphone, and he provided the password to his work computer. (*Id.* at 40:1-6.)

The probation officer opened the computer purportedly belonging to Kuhnel's client. (*Id.* at 41:11-14.) Kuhnel's Facebook account was opened on the computer. (*Id.* at 41:18.) After minimizing the browser displaying Facebook, the probation officer discovered adult pornography on the desktop. (*Id.* at 43:3-13.) The probation officer then provided the computer to the office's forensic specialist, who found child pornography on the computer. (*Id.* at 44:6-25.)

### III. PROCEDURAL HISTORY

Kuhnel was charged with two counts of Receipt of Child Pornography and one count of Possession of Child Pornography. (Indictment, July 11, 2017, Docket No. 14.)

Kuhnel moved to suppress all evidence seized during the warrantless search of his vehicle on November 29, 2016. (Mot. to Suppress, Aug. 7, 2017, Docket No. 20.) The Magistrate Judge recommended that the Court deny Kuhnel's motion. (R&R, Nov. 28, 2017, Docket No. 43.) The Magistrate Judge concluded that Kuhnel's expectation of privacy was diminished because he was on conditional release and that the probation officer's search of the vehicle was supported by reasonable suspicion that Kuhnel was violating the terms of his release. (*Id.* at 11-16.) Kuhnel filed a timely objection to the R&R, objecting "to the finding that the search of his vehicle was supported by reasonable suspicion . . ., and to the finding '. . . that there might be another device "in the vicinity" that Defendant had used for unauthorized internet activity.'" (Obj., Dec. 5, 2017, Docket No. 44.)

## DISCUSSION

### I.  STANDARD OF REVIEW

Upon the filing of a R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "The district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1). "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

## II.   REASONABLE SUSPICION

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  An individual asserting Fourth Amendment rights "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

"[P]robationers do not enjoy 'the absolute liberty to which every citizen is entitled.'" *United States v. Knights*, 534 U.S. 112, 119 (2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)).  A court granting probation "may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens," including the acceptance of a search condition.  *Id.*  A search condition "significantly diminishe[s]" the probationer's reasonable expectation of privacy.  *Id.* at 119-20.  "[P]robationary searches – whether for law enforcement or probationary purposes – are acceptable under *Knights* if based upon reasonable suspicion (or potentially a lesser standard)." *United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016) (quoting *United States v. Lifshitz*, 369 F.3d 173, 181 (2d Cir. 2004)).  Probationers under supervised release have "the most circumscribed expectation of privacy." *Id.*

At the time of the alleged offense, Kuhnel was on supervised release.  As a condition of his release, Kuhnel agreed to "submit at any time to an unannounced visit and/or search of the offender's . . . vehicle." (Hr'g Tr. at 26:9-13.)  "The probation order clearly expressed the search condition," and Kuhnel "was unambiguously informed" of

this condition.  *Knights*, 534 U.S. at 119.  Kuhnel's reasonable expectation of privacy was significantly diminished.  Therefore, the warrantless search of Kuhnel's vehicle was reasonable if supported by a reasonable suspicion that the probation officer would discover evidence of a parole violation.  *See id.* at 118-20.

"Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing."  *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).  The reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).  The reasonableness of the search is informed by the institutional nature of probation:

> "In assessing the governmental interest side of the balance, it must be remembered that the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law."  The government's "interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen."  The Supreme Court has held that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of [a] probationer's house."  The degree of individualized suspicion necessary for "a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable."  An officer having reasonable suspicion that a probationer, who is subject to a search condition, is criminally active is sufficient to establish "enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly

> diminished privacy interests is reasonable." "The same circumstances . . . render a warrant requirement unnecessary.

*Makeeff*, 820 F.3d at 1000-01 (quoting *Knights*, 534 U.S. at 120-21) (alteration and omission in original).

Here, there is sufficient evidence that the probation officer had a reasonable suspicion that Kuhnel was in violation of the conditions of his release. Kuhnel was prohibited from "access[ing] sex/chat/social/dating websites/blogs without prior approval" of his probation officer. (Hr'g Tr. at 19:23-20:4.) The probation officer found an e-mail suggesting that he had contacted a woman on Craigslist seeking to "entertain" her. The probation officer also saw e-mails that indicated that Kuhnel had a Facebook account and was able to find the account before confronting Kuhnel. Moreover, Kuhnel admitted that he accessed both Craigslist and Facebook. The probation officer had reasonable suspicion that Kuhnel was in violation of the conditions of release.

Most importantly, the probation officer had reasonable suspicion to believe that Kuhnel was in possession of a device used to access the internet at the time of the search. The probation officer testified that Kuhnel "stated that he used [Facebook] exclusively on his work computer," and did not access Facebook on his cellphone. (*Id.* at 34:12-18.) The probation officer would therefore need Kuhnel's work computer to assess the extent of the violation of the conditions of release. The probation officer also testified that "I had actually seen a recent update through [Kuhnel's] e-mail account that was in close proximity to the time he arrived at my office indicating he might have something in the vicinity." (*Id.* at 37:17-21.) Context makes clear that the "something" the probation

officer believed Kuhnel may have had at the time of the meeting was a device capable of accessing the internet.  The probation officer, therefore, had reasonable suspicion that Kuhnel was in possession of the device used to access Craigslist and/or Facebook.  The warrantless search of the vehicle was therefore permissible under the Fourth Amendment.  *See Makeeff*, 820 F.3d at 1001.

Additionally, the Court concludes that the probation officer reasonably believed the search to be consensual.  "Whether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual."  *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009) (quoting *Barragan*, 379 F.3d at 530).  "The focus is not whether [the defendant] subjectively consented, but rather, whether a reasonable officer would believe consent was given and can be inferred from words, gestures, or other conduct."  *Id.* (quoting *United States v. Guerrero*, 374 F.3d 584, 588 (8th Cir. 2004)) (alteration in original).

The probation officer's testimony establishes that a reasonable officer would believe that Kuhnel had consented to the search.  When told that the probation officer intended to search his vehicle, "[Kuhnel] did not argue.  He did not put up any type of resistance."  (Hr'g Tr. at 36:18-20.)   Kuhnel did not refuse in any way.  He led the officers to the vehicle.  And it was Kuhnel – not the officers – who opened the vehicle.  When the probation officer asked if there were any electronics inside, Kuhnel voluntarily

"indicated that there was."[1]  (*Id.* at 38:17-19.)  Kuhnel did not protest the taking of his computers and phone.  In fact, nothing suggests that Kuhnel did not consent to the search; he was compliant and cooperative.  The Court therefore concludes that the probation officer reasonably believed the search to be consensual and, therefore, no Fourth Amendment violation occurred in this case.  *See Pena-Ponce*, 588 F.3d at 584.

Accordingly, the Court will overrule Kuhnel's objections, adopt the R&R, and deny Kuhnel's motion to supress.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Objections to the Report and Recommendation [Docket No. 44] are **OVERRULED**, the Magistrate Judge's Report and Recommendation [Docket No. 43] is **ADOPTED**, and the Defendant's Motion to Suppress Evidence Without a Warrant [Docket No. 20] is **DENIED**.

DATED:  January 19, 2018           _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                                                  Chief Judge
                                                       United States District Court

---

[1] Kuhnel may have actually retrieved the electronics for the officers.  (Hr'g Tr. at 38:19-20.)  If true, this would strengthen the Court's finding that a reasonable officer would believe that Kuhnel had consented to the search.  However, since the probation officer could not adequately recall whether Kuhnel in fact retrieved the electronics for the officers, the Court does not consider this fact in its analysis.