## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 17-158 (JRT/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| John Edwin Kuhnel, | |
| Defendant. | |

Manda M. Sertich, Esq., United States Attorney's Office, counsel for Plaintiff.

John Edwin Kuhnel, *pro se* Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendant John Edwin Kuhnel's Motion to Suppress Examiner Report #3, and Defendant's Motion for Dismissal and Release Based on an Insufficient Indictment. (Doc. No. 134, Def.'s Mot. to Suppress; Doc. No. 149, Def.'s Mot. to Dismiss.)

The Criminal Complaint (Doc. No. 1) in this case was filed on June 15, 2017. On July 17, 2017, a grand jury returned a true bill on an Indictment (Doc. No. 14) charging Defendant with two counts of receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2). Defendant elected to proceed *pro se* and standby counsel was appointed. (Doc. No. 119, Hr'g Mins.) On April 1, 2019, a grand jury returned a true

bill on a Superseding Indictment (Doc. No. 127) that added seven counts for receipt of child pornography, and one count for possession of child pornography. Following an arraignment on the Superseding Indictment and a hearing on other defense motions, the trial date was continued to September 9, 2019. (Doc. No. 130, Status Conf. Mins.) On April 12, 2019, Defendant moved to suppress Examiner Report #3. (Doc. No. 134, Def.'s Mot. to Supp.) On May 2, 2019, Defendant moved to dismiss the Superseding Indictment. (Doc. No. 149, Def.'s Mot. to Dis.) These matters were referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

For the reasons set forth below, this Court recommends that both Defendant's Motion to Suppress Examiner Report #3 (Doc. No. 134) and Defendant's Motion for Dismissal and Release Based on an Insufficient Indictment (Doc. No. 149) be denied.

**I.      Defendant's Motion to Suppress Examiner Report #3 (Doc. No. 134)**

Defendant's Motion to Suppress Examiner Report #3 (Doc. No. 134) was filed on April 12, 2019. The Government filed its Response (Doc. No. 144) on May 1, 2019, and Defendant filed a Response to the Response on the Motions to Suppress and Waive Jury Trial (Doc. No. 160) on June 10, 2019. An evidentiary hearing on Defendant's motion to suppress was held on July 2, 2019, at which testimony was received from Officer Dale Hanson and Defendant's expert witness, Jeffrey Wold. (*See* Doc. No. 172, Hr'g Mins; Doc. No. 175, Hr'g Tr.) At this hearing, Defendant was granted leave to file a supplemental brief by July 30, 2019. (*See* Hr'g Mins.; Hr'g Tr. 129–30.) Defendant filed a motion for an extension of the July 30th deadline (Doc. No. 177), which this Court

granted on July 31, 2019. (Doc. No. 180, 7/31/19 Ord.) This Court instructed the Defendant to work with his standby counsel to ensure Defendant met the new filing deadline of August 15, 2019. (*Id.*) Defendant failed to meet this extended deadline, and the Court issued an Order taking his motion to suppress (Doc. No. 134) under advisement on August 16, 2019.[1] (Doc. No. 188, 8/16/19 Ord.)

### A. Background

Defendant seeks to suppress Examiner Report #3, which was prepared by the Government's case agent, Officer Dale Hanson. (*See* Doc. No. 173, Ex. List, Plf. Ex. 1.) Prior to charging, Officer Hanson conducted an initial forensic examination ("Examiner Report #1") of Defendant's laptop computer in March 2017. (Hr'g Tr. 71.) Officer Hanson's initial examination was limited in scope because a full examination of a computer is not ordinarily required prior to charging once contraband has been discovered. (*Id.* at 72–73.) Officer Hanson's Examiner Report #1 was disclosed to defense counsel on July 24, 2017. This original report focused on Defendant's alleged use of the NewsLeecher newsgroup program to download child pornography files from the Internet. (*Id.* at 74–75.) The first Indictment (Doc. No. 14) was based on the findings

---

[1]    On August 19, 2019, the Clerk's Office received Defendant's Memorandum of Law in Support of Motion to Suppress Examiner Report #3 by mail, postmarked August 16, 2019. (Doc. No. 189.) On August 28, 2019, Defendant filed a Motion to Except [sic] Late Filing (Doc. No. 194), arguing that despite missing the August 15, 2019 deadline, this Court should nonetheless consider Defendant's supplemental briefing. That motion (Doc. No. 194) was denied in an Order on August 30, 2019 (Doc. No. 198), and Defendant's supplemental briefing (Doc. No. 189) was stricken as untimely. This Court notes, however, that even had Defendant's supplemental briefing been timely, none of the arguments therein would have changed this Court's recommendation.

3

of Examiner Report #1 and included two counts of receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2).

Jeffrey Wold was engaged by Defendant's counsel[2] to assist Defendant with the forensic analysis of his laptop computer. In January 2019, Wold contacted Officer Hanson by email to inform him that Wold had been appointed to perform a forensic examination in Defendant's case. (Hr'g Tr. 75.) Officer Hanson knew Wold from his work as a defense expert in previous cases. (*Id.* at 75–76.) Sometime prior to February 15, 2019, the prosecution team requested that Officer Hanson conduct a more thorough forensic analysis of the two child pornography files in preparation for trial. (*Id.* at 76–77, 118–19.) Officer Hanson testified that it is "very common" for prosecutors to make such requests, and that in "pretty much every case I've gone to trial on I've done additional examination work." (*Id.* at 77.)

Meanwhile, between January 3, 2019, and February 19, 2019, Officer Hanson and Wold had communicated by email concerning the logistics of Wold's examination of Defendant's computer. (*See* Ex. List, Plf. Ex. 2.) Hanson sent Wold his original forensic examination report and some other preliminary materials. (Hr'g Tr. 78–80.) Wold inquired about where he would conduct his examination, and Officer Hanson offered Wold the use of his workspace in Minneapolis City Hall. (*Id.* at 79–81.) Officer Hanson

---

[2]   Glenn Bruder initially served as Defendant's court-appointed attorney. However, at a hearing held on February 15, 2019, Defendant opted to proceed *pro se*, and Mr. Bruder was appointed as his stand-by counsel. (*See* Doc. No. 119, Mot. Hr'g Mins.)

testified that he did this because he believed Wold preferred the environment there to the FBI office. (*Id.*) Wold shipped his hardware to Officer Hanson's office ahead of his examination. (*Id.* at 48, 79.) Prior to Wold's visit, Officer Hanson offered Wold a portable copy of a program called Internet Evidence Finder, which contained internet history data extracted from a forensic copy of Defendant's laptop computer "in case [Wold] wanted to look at it ahead of time." (*Id.* at 79–80.)

On February 19, 2019, Wold traveled to Minneapolis to examine Defendant's HP Pavilion laptop containing child pornography. (*Id.*) Wold met Officer Hanson at his workstation in the Minneapolis City Hall. Officer Hanson shares his workspace with four other examiners. (*Id.* at 49, 81.) The workstation is a large U-shaped cubicle. (*Id.*) Wold worked at a desk opposite Officer Hanson, where Wold was seated with his back facing Officer Hanson's back. There was approximately ten feet of space between them. (*Id.* at 49–50, 81.) Officer Hanson provided Wold with a forensic copy of the laptop for his examination. (*Id.* at 81.)

Wold spoke in general terms with Officer Hanson about what Wold was looking for in his examination.[3] (*Id.* at 81–82.) Wold disclosed to Hanson that he was concerned with "the receipt files not being right." (*Id.* at 81–82.) Because the program Wold was using took longer than expected to process the data, Officer Hanson provided Wold with the forensic program he used to review Defendant's laptop, including Officer Hanson's

---

[3]   The Government represents that this is not unusual during defense examinations. (Gov't's Mem. 3.) Officer Hanson testified to the same, stating that he has "heard general comments about what [defense experts] are looking for before." (Hr'g Tr. 81–82.)

5

"bookmarks"[4] of important information discovered during his examination. (*Id.* at 82–83.) Officer Hanson believed that this would help Wold expedite his forensic analysis. (*Id.*)

Wold conducted his examination in Officer Hanson's workspace between February 19 and 21, 2019. (*Id.* at 85.) Officer Hanson testified that during Wold's examination, Wold mentioned a program called "Forte," a newsgroup program used to share and download files.[5] (*Id.* at 83–84.) Officer Hanson testified that he wrote the name "Forte" down on a piece of paper, and that he had no previous knowledge of the Forte program. (*Id.* at 83–84, 105.) Officer Hanson testified that he did not recall anything further about this exchange. (*Id.*) At another point during Wold's examination, Wold pointed out to Officer Hanson that one of the image files charged as a possession count was a thumbnail image of an already existing image file. (*Id.* at 40, 51–52, 84.) Wold testified that using thumbnails to charge additional possession counts is "common practice," and that in his work he "commonly relay[s]" such information to investigating agents. (*Id.* at 40, 52.)

During the examination, Officer Hanson did not solicit any information from Wold or monitor Wold's examination. (*Id.* at 50–51, 84–85.) Officer Hanson and Wold

---

[4] Officer Hanson testified that the term "bookmarks" here means that "every file that [Officer Hanson] marked as evidence was already premarked for [Wold] so he wouldn't have to go and find it himself." (Hr'g Tr. 83.)

[5] Wold testified that he did not recall this exchange. (Hr'g Tr. 36.)

did not review or discuss the content of any notes taken by Wold during his examination. (*Id.*) Wold did not discuss defense strategy with Officer Hanson. (*Id.* at 51, 84.)

Officer Hanson provided Wold with a defense copy of the entire case, with all contraband removed. (*Id.* at 85.) Officer Hanson testified that "basically in every case I make a defense copy of the entire case which includes everything but the contraband. I asked [Wold] if he had a copy of that and he said he didn't, so I burned a new disc for him and gave that to him." (*Id.*) Wold also took files and data with him on a thumb drive for further examination, after first allowing Officer Hanson to confirm that they contained no contraband. (*Id.* at 50, 85.) Both Officer Hanson and Wold testified that this is common practice. (*Id.*)

During the week of February 25, 2019, prosecutors renewed their previous request that Officer Hanson perform a deeper forensic examination of the files summarized in Counts 1 and 2 of the original Indictment. (*Id.* at 85–86.) Shortly thereafter, Officer Hanson conducted the searches detailed in Examiner Report #3 and provided the U.S. Attorney's Office with a summary of his findings in an email dated February 28, 2019. (*Id.* at 89.) As set forth in his Examiner Report #3, Officer Hanson conducted a keyword search for part of the filename of the child pornography file summarized in Count 1 of the original Indictment. His keyword search found the filename in two different locations. (*Id.* at 86–87.) Upon further investigation, Officer Hanson discovered that the second—newly discovered—file had been downloaded through Forte. (*Id.* at 87–89.) He then found additional child pornography files downloaded through Forte. (*Id.*)

7

Officer Hanson reported his findings in Examiner Report #3, and the Government superseded the original Indictment with seven additional counts of receipt of child pornography. (Doc. No. 127, Sup'g Indictment.)

Wold continued to communicate with Officer Hanson following the conclusion of his examination. (Hr'g Tr. 90.) For example, Wold asked Officer Hanson for additional information from the forensic copy of Defendant's laptop computer. (*Id.*) Officer Hanson wrote Wold:

> I'm seeing a number of matches from the downloaded newsgroups lists in Forte to files in the Keep folder. The creation times in the Keep folder are consistent with the time range that Forte was run. I'm not sure if you came up with that yet but I will be working on a report to detail the findings. Hopefully it will be ready early next week.

(*Id.* at 90–91.) Wold responded, "Thanks. I think I have the agent.ini file . . . I'm not sure what this guys [sic] angle is but I'm supposed to run some 'experiments' on newsleecher." (*Id.* at 91.)

Officer Hanson sent Wold his forensic report. (*Id.* at 91.) Wold replied, "Nice work. Did you ever subpoena PayPal?" (*Id.* at 92.) Hanson informed Wold that he had not, and Wold responded, "There I go giving you ideas again. I passed your report on to the standby attorney who will likely give it to Kuhnel." (*Id.*) Officer Hanson wrote back, "There are so many things that could be chased down with this activity. Sounds good on the report. I think the AUSA will be sending him a copy." (*Id.* at 92–93.) Officer Hanson testified that he never did subpoena PayPal records in this case because he "didn't feel it was necessary for the investigation" because he already had plenty of evidence. (*Id.* at 93.)

**B. Legal Analysis**

Defendant moves to suppress Examiner Report #3 on the grounds that the Government interfered with the attorney-client relationship by causing his expert, Wold, to disclose work-product protected information to Officer Hanson, resulting in the new charges contained in the Superseding Indictment. (Doc. No. 134, Def.'s Mot. to Suppress.) The Government opposes Defendant's motion.[6] (*See* Doc. No. 144, Gov't Resp.)

In criminal proceedings, the work-product doctrine states that the Government is not authorized to inspect or discover "reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense." Fed. R. Crim. P. 16(b)(2)(A); *United States v. Nobles*, 422 U.S. 225, 236 (1975). "At its core, the work-product doctrine shelters the mental processes of the attorney," but in practice, its protections include "material prepared by agents for the attorney." *Nobles*, 422 U.S. at 238.

Defendant claims that Officer Hanson "knowingly solicit[ed] information" from Wold. (Def.'s Mot. to Suppress 1.) Defendant also claims that over the course of Wold's three-day forensic examination, Officer Hanson "snooped" on Wold and "solicited information on the results of [his] examination." (*Id.*) These allegations are not supported by the record. Indeed, in-person testimony at the motion hearing held on July 2, 2019,

---

[6]   Defendant also argues that Examiner Report #3 should be suppressed because it is based on evidence not presented to the grand jury. (Doc. No. 134 at 1.) This is incorrect. The information contained in Examiner Report #3 was presented to the grand jury on April 1, 2019, relating to Counts 1 through 7. (Doc. No. 127.)

9

gives no indication that Officer Hanson ever solicited information from Wold. Officer Hanson testified that he neither solicited information from Wold nor spoke with him about his defense strategy. (Hr'g Tr. 84.) Officer Hanson further testified that he did not monitor Wold's examination, nor did he observe Wold's computer screen or see whether Wold was taking notes. (*Id.*) Wold's testimony corroborates Officer Hanson's account of these matters. (*Id.* at 49–52.) Even assuming that the information Wold disclosed to Officer Hanson is protected work-product, Defendant's motion fails because Defendant has failed to establish that Officer Hanson or any other member of the prosecution team took any action in violation of Defendant's constitutional rights. Simply put, Defendant's motion and arguments do not point to any misconduct by the Government.

The record demonstrates that Wold volunteered information to Officer Hanson.[7] (*See* Hr'g Tr. 50–51, 83–84, 91–92.) Without prompting by Hanson, Wold mentioned the existence of the Forte program on Defendant's computer. Wold also voluntarily disclosed to Officer Hanson that Forte is a newsgroup program. (*Id.* at 83–84.) Wold told Hanson that one of the images underlying the possession counts was actually a thumbnail image. (*Id.* at 84.) And after Officer Hanson sent Wold a copy of his forensic report as required, Wold—unsolicited—responded via email, "Nice work. Did you ever subpoena Paypal?" (*Id.* at 54, 91–92.)

At best, Defendant's allegations raise issues with his own expert's conduct, and not any action attributable to the Government. But even if Defendant believes his own

---

[7] In making this finding, this Court is not endorsing such communications from one expert witness to another.

expert's conduct is grounds for suppression, the Government has established that the information identified in Examiner Report #3 would have been discovered by lawful means. If "the information ultimately or inevitably would have been discovered by lawful means" then it need not be suppressed. *Nix v. Williams*, 467 U.S. 431, 444 (1984) (holding that in such situations, the deterrence rationale underlying the exclusionary rule is so weak that the challenged evidence should be admitted, and that "[a]nything less would reject logic, experience, and common sense"); *Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016).

As discussed above, Officer Hanson had been directed by the prosecution team to perform a more thorough analysis of the files summarized in Counts 1 and 2 of the original Indictment prior to the disclosures by Wold. (*See* Hr'g Tr. 76–77, 118–19.) Officer Hanson testified that he conducts further analysis in "pretty much every case prior to trial." (*Id.* at 77.) According to Officer Hanson's testimony, he ran a keyword search using the filename of the image charged in Count 1 of the Indictment. (*Id.* at 86–87.) That keyword search uncovered the existence of the Forte newsgroup program. (*Id.* at 87–88.) Further investigation revealed that Defendant used the Forte program to download some of the child pornography files that had been previously discovered, and eventually led to the discovery of additional child pornography files that were downloaded using the Forte program. (*Id.* at 88–89.)

This Court finds Officer Hanson's testimony credible. The undersigned had the opportunity to hear Officer Hanson's in-person testimony, and to make credibility determinations based on his twenty-two years as an officer with the Minneapolis Police

Department, his years of service as a member of the FBI Child Exploitation Task Force, his specialized training and experience in conducting forensic examinations on electronic devices, his detailed and forthright answers to questions posed to him at the motion hearing, and his lack of evasiveness. (*See id.* at 70–71.) Accordingly, Defendant's Motion to Suppress Examiner Report #3 (Doc. No. 134) should be denied because any information allegedly due to Wold's disclosures was later lawfully obtained.[8]

## II. Motion for Dismissal and Release Based on an Insufficient Indictment (Doc. No. 149)

Defendant filed his Motion for Dismissal and Release Based on an Insufficient Indictment (Doc. No. 149) on May 2, 2019. The Government responded on May 17, 2019 (Doc. No. 152), and Defendant filed a Response to Response to Motion by John Edwin Kuhnel re 149 Motion to Dismiss (Doc. No. 159) on June 7, 2019. Defendant argues that this matter should be dismissed because the Superseding Indictment does not provide a plain, concise, and definite statement of the essential facts constituting the offense charged as required by Rule 7 of the Federal Rules of Criminal Procedure; fails to state an offense and lacks specificity pursuant to Rule 12 of the Federal Rules of Criminal Procedure; violates the Fifth Amendment's grand jury clause and double jeopardy protection; and violates the Sixth Amendment's requirement of notice of the crime charged. (Doc. No. 149, Def.'s Mot. to Dismiss.)

---

[8] This Court observes that Defendant's expert, Wold, testified that he would expect that two forensic experts examining the same computer files would come to the same conclusion as to their source. (Hr'g Tr. 55.) Moreover, Wold testified specifically that a forensic expert reviewing the two files charged in the original Indictment "should have" discovered that one of those files was downloaded through the Forte program. (*Id.* at 56.)

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is "legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001). An indictment is considered sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id.*

The Superseding Indictment lists each charge against Defendant—Counts 1–9 (Receipt of Child Pornography), Count 10 (Possession of Child Pornography), and Count 11 (Possession of Child Pornography). (Doc. No. 127.) Each charge identifies the statute Defendant is alleged to have violated—Title 18, United States Code, Section 2252(a)(2) and 2252(b)(1) (Counts 1–9), Title 18, United States Code, Section 2252(a)(4)(B) and 2252(b)(2) (Count 10), and Title 18, United States Code, Section 2252A(a)(5)(B) and 2252A(b)(2) (Count 11). (*Id.*) For each count, the Superseding Indictment alleges that Defendant committed the necessary elements to the offense. (*Id.*) Counts 1–9, for example, allege that Defendant "having been previously convicted under the laws of the State of Minnesota relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" knowingly received "visual depictions using a means and facility of interstate and foreign commerce . . . by any means including a computer, where the production of such visual depictions involved the use of a minor engaging in

13

sexually explicit conduct and such visual depictions were of such conduct." (*Id.*) *See* 18 U.S.C. §§ 2252(a)(2), 2252(b)(1).[9] The Superseding Indictment then lists a description of the images Defendant allegedly received, and the date on which each image was allegedly received. (*Id.*) This information is specific enough to inform Defendant of the charges against him, and to ensure that he is not indicted in another prosecution for the same conduct.

---

[9]   For the possession count, Count 10 alleges that Defendant,

> having been previously convicted under the laws of the State of Minnesota relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . did knowingly possess one or more matters which contained visual depictions that had been mailed, shipped, and transported using a means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, by any means including by computer, where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of such conduct, including, but not limited to, the following computer video and image files: . . . .

(Doc. No. 127.) Count 11 alleges that Defendant,

> having been previously convicted under the laws of the State of Minnesota relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . did knowingly possess any matter, including a computer, that contained an image of child pornography, as defined in Title 18, United States Code, Section 2256(8), and that was produced using materials that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, to wit: . . . a computer image file depicting a known minor, approximately ten or eleven years old, that had been adapted or modified to appear that the known minor is naked . . . .

(*Id.*)

Nor does the Superseding Indictment contain multiplicitous counts. "An indictment is multiplicitous if it charges the same crime in separate counts." *United States v. Platter*, 514 F.3d 782, 785 (8th Cir. 2008). Such an indictment violates the Double Jeopardy Clause of the Fifth Amendment because "the jury can convict on both counts, resulting in two punishments for the same crime." *Id.* (quoting *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004)). If the same statutory offense is charged twice, the operative question is "whether the facts underlying each count were intended by Congress to constitute separate units of prosecution." *Id.*

As noted above, the Superseding Indictment charges nine counts of receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). Counts 1–6 and 9 relate to the receipt of different images. (Doc. No. 127.) Counts 7 and 8 each charge Defendant with receiving the same image, but on different days. (*Id.*) Thus, the nine receipt counts are not multiplicitous. *See United States v. Burman*, 666 F.3d 1113, 1117 (8th Cir. 2012) (finding no double jeopardy violation where a defendant was charged with three receipt counts for peer-to-peer downloads that occurred on three different days). The two possession counts (Counts 10 and 11), moreover, are not multiplicitous of the receipt counts because the possession counts are for files that are different than those in the receipt counts. (Doc. No. 127.) "Accordingly, the receipt and possession charges are based on separate facts." *United States v. Manning*, 738 F.3d 937,

946 (8th Cir. 2014).[10] Finally, the Superseding Indictment is not multiplicitous because it charges violations of 18 U.S.C. § 2252 in Count 10 and § 2252A in Count 11. Count 10 charges Defendant with the knowing possession of one or more visual depictions of a minor engaging in sexually explicit conduct under 18 U.S.C. § 2252(a)(4)(B);[11] Count 11 charges Defendant with different conduct – the knowing possession of any material that contains an image of child pornography produced using a computer that had been transported in interstate or foreign commerce. *See* 18 U.S.C. § 2252A(a)(5)(B).

For the foregoing reasons, Defendant's motion to dismiss (Doc. No. 149) should be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's *pro se* Motion to Suppress Examiner Report #3 (Doc. No. 134) be **DENIED**; and

---

[10] "This circuit has held that possession of child pornography is a lesser-included offense to receipt of child pornography . . . . This means the jury could not use the same pieces of evidence to convict him of both receipt and possession." *Manning*, 738 F.3d at 946.

[11] Count 10 charges Defendant with possessing more than one image. But Count 10 is not duplicitous because the jury can be instructed that it must unanimously agree that Defendant possessed particular visual depictions. *See United States v. Smith*, 910 F.3d 1047, 1052–53 (8th Cir. 2018); *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995) ("Duplicity is the joining in a single count of two or more distinct and separate offenses. The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense.").

2. Defendant's Motion for Dismissal and Release Based on an Insufficient Indictment (Doc. No. 149) be **DENIED**.


Date: September 3, 2019                *s/ Becky R. Thorson*
                                       BECKY R. THORSON
                                       United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **seven (7) days**. A party may respond to those objections within **seven (7) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).