# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 17-158 (JRM/BRT) |
| Plaintiff, | **ORDER** |
| v. | |
| JOHN EDWIN KUHNEL, | |
| Defendant. | |

Manda M. Sertich, Emily Polachek, Assistant United States Attorneys, **OFFICE OF THE UNITED STATES ATTORNEY**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

John Edwin Kuhnel, OID #240886, Anoka County Jail, 325 East Jackson Street, Anoka, MN 55303, *pro se* defendant.

Defendant John Edwin Kuhnel was charged with nine counts of receipt of child pornography under 18 U.S.C. §§ 2252(a)(2) and (b)(1). (Superseding Indictment at 1–2, Apr. 1, 2019, Docket No. 127.) Kuhnel was also charged with two counts of possession; one under 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2); and one under 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (*Id.* at 3–4.) Kuhnel filed a series of pretrial motions requesting the Court to (1) suppress Examiner Report #3 (Mot. to Suppress Ex. Report, Apr. 12, 2019, Docket No. 134); (2) dismiss the indictment as insufficient (Mot. to Dismiss for Insufficiency, May 2, 2019, Docket No. 149); (3) order the United States to disclose its witness list (Mot. to Disclose Witnesses, Sept. 9, 2019, Docket No. 202); (4) order discovery of certain information (Mot. for Impeaching Matter, Sept. 12 2019, Docket No. 205); (5) dismiss the indictment for government misconduct (Mot. to Dismiss for Gov.

Misconduct, Sept. 18, 2019, Docket No. 217); (6) dismiss the indictment for vindictive prosecution (Mot. to Dismiss for Vindictive Prosecution, Sept. 18, 2019, Docket No. 218); (7) reopen the issue of suppression of evidence seized without a warrant and grant a continuance of trial (Mot. to Recons., Sept. 18, 2019, Docket No. 219); (8) preclude certain evidence pursuant to a motion in limine (Def.'s Mot. in Lim., Sept. 20, 2019, Docket No. 226); (9) dismiss certain counts as multiplicitous of another count (Mot. to Dismiss Counts 2–9, Sept. 20, 2019, Docket Nos. 227); (10) order specific accommodations for the inspection of evidence (Mot. to Inspect, Oct. 10, 2019, Docket No. 236); and (11) allow for an out-of-time supplemental briefing on Kuhnel's motion to dismiss for vindictive prosecution. (Mot. for Suppl. Brief, Nov. 7, 2019, Docket No. 248.)

The United States opposes the majority of these motions but has indicated a willingness to provide certain accommodations for the inspection of evidence. (Omnibus Resp. to Pretrial Mot. ("Pretrial Mot. Resp.") at 2, 7, 9, 11-16, 17, Oct. 25, 2019, Docket No. 241.) For the reasons set forth below, the Court will largely deny Kuhnel's motions.

## <u>DISCUSSION</u>

## I.   BACKGROUND

The parties are familiar with the relevant factual and procedural history. For the sake of brevity, the Court will not repeat such history here and will only discuss facts in the sections below to the extent necessary to rule on the present motions.

## II.   REPORT AND RECOMMENDATION (Docket No. 199.)

Kuhnel's motions to (1) suppress Examiner Report #3 (Docket No. 134); and (2) dismiss the indictment as insufficient (Docket No. 149) are the subject of a Report and Recommendation ("R&R") from the Magistrate Judge. (R&R, Sept. 3, 2019, Docket No. 199.) The Magistrate Judge recommended that the Court deny both motions. (R&R at 16–17.) Kuhnel objected to the R&R's denial of both motions. (Def.'s Objs. to R&R at 3, 10, Sept. 13, 2019, Docket No. 206.) The United States filed a response urging adoption of the R&R.[1] (Gov't Resp. at 1, Sept. 27, 2019, Docket No. 230.) The Court will review Kuhnel's objections de novo. 28 U.S.C. § 636(b)(1); *accord* LR 72.2(b)(3). For the reasons set forth below, the Court will adopt the R&R and deny Kuhnel's objections.

## A. Motion to Suppress Examiner Report 3

As it pertains to Kuhnel's motion to suppress Examiner Report #3, Kuhnel contends that (1) the Magistrate Judge incorrectly disregarded Kuhnel's supplemental briefing; (2) the R&R mischaracterizes the facts; and (3) the R&R incorrectly found that Kuhnel did not suffer a violation of his constitutional rights and that the inevitable discovery doctrine applied. (Def.'s Objs. To R&R at 2–10.)

### 1. Objection to Denial of the Supplemental Briefing

Kuhnel objects to the Magistrate Judge's order denying acceptance of his supplemental briefing.[2] The Magistrate Judge stated, however, that even if the

---

[1] The United States filed a motion for leave to file an out-of-time and overlength response to Kuhnel's objections to the R&R. (Mot. for Leave, Sept. 27, 2019, Docket No. 229.) The Court will grant this motion as the Court gave the parties conflicting filing deadlines and the United States filed within time of the latter deadline. *Compare* (R&R at 17) (stating response to objections due seven days after objections filed) *with* (Text of Docket No. 199 stating response to objections due Oct. 1, 2019.)

[2] Kuhnel filed his initial motion on April 12, 2019. (Def.'s Mot., Apr. 12, 2019, Docket No. 134.) The Magistrate Judge held a hearing on this motion on July 2, 2019 and ordered that Kuhnel file a supplemental brief by July 30, 2019. (Minute Entry, July 2, 2019, Docket No. 172.) When Kuhnel

supplemental briefing would have been timely, it would not have altered the recommendation. (R&R at 3 n.1.) Further, Kuhnel revives the core arguments made in his supplemental briefing, sometimes word-for-word, in separately filed motions that the Court will review. (*Compare* Def.'s Supp. Brief, Aug. 20, 2019, Docket No. 189 *with* Def.'s Objs. to R&R, Sept. 13, 2019, Docket No. 206 *and* Mot. to Dismiss for Gov. Misconduct, Sept. 18, 2019, Docket No. 217.) Thus, the Court will deny Kuhnel's objection on this ground as it is irrelevant to the outcome.

### 2. Objection to Factual Issues in Report and Recommendation

On the claimed factual errors in the R&R, Kuhnel first argues that Officer Dale Hanson's initial analysis of Kuhnel's computer was a complete examination and was not limited in scope. Second, Kuhnel disagrees with the R&R finding that Officer Hanson offered Wold—Kuhnel's Expert—the use of certain software because Wold's own software was taking longer than expected. Third, Kuhnel claims the Magistrate Judge incorrectly found that Officer Hanson's testimony lacked evasiveness. Kuhnel further argues that Officer Hanson's statements impeach his credibility.

---

filed a request for an extension on his original due date, the Magistrate Judge extended the deadline to August 15, 2019. (Order Granting Mot., July 31, 2019, Docket No. 180.) Kuhnel had more than four months from his initial filing to prepare a full briefing and more than a month to prepare supplemental briefing. In extending Kuhnel's supplemental briefing deadline, the Magistrate Judge explicitly directed Kuhnel to work with standby counsel to ensure he met the August 15, 2019 deadline. (*Id.* at 1 n.1.) Kuhnel asserts that he submitted his supplemental brief to the prison for mailing on August 15, 2019. (Def.'s Mot., Aug. 28, 2019, Docket No. 194.) Courts have applied a prisoner-mailbox rule to pro se inmates filing appeals and considered an appeal filed on the date the prisoner turns it over to the prison for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The Eighth Circuit has suggested extending this rule to other filings by prisoners. *E.g.*, *Miller v. Benson*, 51 F.3d 166, 169 (8th Cir. 1995). The Eighth Circuit has left open the question of whether the prisoner-mailbox rule would apply to a pro se defendant's supplemental briefing. *See id.* The Court need not reach the issue for the reasons stated above.

The hearing transcript clearly supports the Magistrate Judge's factual summary and the Court will deny Kuhnel's objections. First, Officer Hanson testified that he conducted an initial forensic examination of Kuhnel's laptop and, as is common practice, was requested later to conduct an additional analysis. (SEALED Hr'g Tr. at 76:16–77:10, July 11, 2019, Docket No. 175.) An initial examination that later requires additional analysis indicates that the first examination was not complete.

Second, while Wold stated he did not recall why Officer Hanson offered Wold the use of a forensic software program, Officer Hanson stated it was because Wold's program was taking longer than expected. (*Id.* at 41:8–24; 82:9–21.) The Magistrate Judge adopted the only explanation proffered during the hearing. Third, the hearing transcript does not show Officer Hanson acting in an evasive manner nor does it show Officer Hanson impeaching himself. The Court also notes that the Magistrate Judge was present for the examination of Officer Hanson and is therefore in a much better position to evaluate his credibility and demeanor when subject to questioning. Thus, the Court finds that the R&R accurately reflected the facts and adopts them herein.

### 3. Objection to Finding No Constitutional Violations

Turning to Kuhnel's core objections to suppress, Kuhnel makes two main arguments. First, Kuhnel argues that Officer Hanson impermissibly interfered with and solicited information from Wold and, as a result, interfered with attorney-client privilege and the expert's work product. Second, Kuhnel argues that the United States would not have independently discovered the information because it had already conducted a thorough search of Kuhnel's computer without finding the evidence. As a result, Kuhnel

argues for suppression of Examiner Report #3 under the Fourth and Fifth Amendments. Each argument is considered below.

### a. Impermissible Interference or Solicitation

The United States may not discover or inspect the work-product of the defendant, the defendant's attorney, or the defendant's agent during the case. Fed. R. Crim. P. 16(b)(2)(A); *United States v. Nobles*, 422 U.S. 225, 237–39 (1975). Work-product doctrine is designed to protect the mental processes of the attorney but because attorneys must rely on other investigators in preparation for trial, it also protects the work of other agents, including experts. *See id.*

Work-product doctrine prevents the United States from either gaining unauthorized access or compelling Kuhnel's expert, Wold, to disclose his mental processes and work-product. Kuhnel alleges that the United States gained unauthorized access by (1) placing Wold in a government cubicle to perform his examination of the computer; (2) continuing to communicate with Wold after Wold's investigation was complete; and (3) effectively soliciting information from Wold.[3]

The record does not support these allegations. Wold testified that he had sufficient privacy during his examination and that neither Officer Hanson nor any agent of the United States compelled him to divulge any privileged information. (SEALED Hr'g Tr. at 67:4–14, July 11, 2019, Docket No. 175) Officer Hanson denied observing Wold's work and

---

[3] Kuhnel also argues that the United States engaged in outrageous misconduct due to its alleged interference with Wold. Kuhnel has presented this argument in a stand-alone motion. (Mot. to Dismiss for Gov. Misconduct at 1, Sept. 18, 2019, Docket No. 217). The Court will dismiss this objection for the same reasons it will dismiss Kuhnel's parallel Motion to Dismiss. *See infra.*

Wold agreed.  (*Id.* at 49:15–52:10, 84:16–85:6.)  There is no evidence that any government agent violated Kuhnel's constitutional rights during Wold's examination.

Just as there is no evidence that Officer Hanson or any other government agent impermissibly observed Wold's work, there is no evidence that Officer Hanson solicited information from Wold.  Kuhnel's argument is, in essence, it "takes two to tango." (Def.'s Objs. to R&R at 4, Sept. 13, 2019, Docket No. 206.)  But any information Officer Hanson received from Wold appears to have been voluntarily disclosed by Wold without any solicitation by the United States.  (SEALED Hr'g Tr. at 50-51, 54, 83-84, 91-92, July 11, 2019, Docket No. 175.)  And neither the Constitution nor the privilege doctrine compels a government agent to stop listening when someone voluntarily discloses information. Because nothing in the record demonstrates that a government agent violated Kuhnel's constitutional rights or impermissibly violated a privilege, Kuhnel has not demonstrated grounds to suppress Examiner Report #3.

### b.  Inevitable Discovery

Even if the Court assumed that the United States impermissibly gained work-product from Wold in violation of Kuhnel's rights, the evidence would be admissible under the inevitable discovery doctrine.[4]  *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Sallis*, 920 F.3d 577, 582–83 (8th Cir. 2019).  The burden of proving inevitable

---

[4] Kuhnel also objects to applying the independent source doctrine to this search.  Under the independent source doctrine, the evidence must have "been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984).  Because Kuhnel alleges that United States impermissibly obtained work-product and then discovered the evidence, the Court agrees that the independent source doctrine would not applicable here if the United States had violated Kuhnel's rights.  Unavailability of independent source doctrine, however, does not preclude admission under the inevitable discovery doctrine.  *Id.*

discovery is on the Government. *Nix*, 467 U.S. at 444. The Government must prove by a preponderance of the evidence that "(1) there is a reasonable probability the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Thomas*, 524 F.3d 855, 858 (8th Cir. 2008).

The United States has met its burden on both elements. First, the United States has shown there was a reasonable probability of discovery by lawful means. Kuhnel claims that United States had already completed an exhaustive search and argues the Forte program would not have been discovered without Officer Hanson gaining unauthorized access to Wold's work-product. But the United States provided evidence that it planned to conduct a more thorough examination of the computer and its files before Wold disclosed any information to Officer Hanson. (SEALED Hr'g Tr. at 76:16–77:10, 118:25–19:24, July 11, 2019, Docket No. 175.) Officer Hanson also discovered the existence of the Forte program using a keyword search based on evidence the United States had prior to Kuhnel being indicted—the filename of the image. (*Id.* at 86:21-88:8.) Wold, Kuhnel's own expert, also stated another expert reviewing the laptop "should have" found the Forte program. (*Id.* at 55:10–56:7.) Because United States already had the evidence it needed to discover the Forte program and it planned to conduct a more thorough search, there was a reasonable probability of discovery of the Forte program without the information disclosed by Wold.

Second, the United States has also shown that it was actively pursuing a substantial, alternative line of investigation at the time of Officer Hanson's contacts with Wold. As

noted above, United States already planned to conduct further analysis of the computer. (*Id.* at 76:16–77:10, 118:25–19:24.) Moreover, Officer Hanson stated he conducts additional analysis prior to almost every trial. (*Id.* at 76:23–77:7.) This shows the existence of the necessary alternative line of investigation, meeting the second element of the inevitable discovery doctrine. *See Thomas*, 524 F.3d at 858. As a result, Examiner Report #3 would be admissible even if the United States had violated Kuhnel's constitutional rights.

Because the Court finds that (1) Kuhnel's constitutional rights were not violated, and (2) even if Kuhnel's rights had been violated, the inevitable discovery doctrine applies, the Court will overrule Kuhnel's objections and will adopt the Magistrate Judge's recommendation that Kuhnel's Motion to Suppress Examiner Report #3 be denied.

## B. Insufficient Indictment

Kuhnel also objects to the Magistrate Judge's recommendation that the Court deny Kuhnel's Motion for Dismissal and Release Based on an Insufficient Indictment. Kuhnel's main arguments appear to be that (1) the Magistrate Judge showed bias when considering this issue; (2) the R&R did not adequately address whether the superseding indictment charged each element; and (3) the R&R did not adequately address whether the indictment includes multiplicitous counts.[5]

### 1. Bias

---

[5] In his initial motion, Kuhnel claimed that this motion did not seek dismissal due to multiplicitous counts. (*See* Def.'s Mot. at 12 n.23, May 2, 2019, Docket No. 149.) Because the Government's response to the initial motion, the R&R, and Kuhnel's Objections all address this issue, the Court addresses it as well.

Kuhnel argues that the Magistrate Judge showed bias by ignoring his arguments and citing "everything in favor of the Government." (Def.'s Objs. to R&R at 10.) Parties are permitted to make any argument and cite any authority they wish, but judges are not required to accept them. Correctly applying the law even when it favors one side does not make a judge biased. Nothing in the record indicates that the Magistrate Judge harbors bias.

### 2. Adequately Addressing the Charging of Each Element

Kuhnel argues that the R&R did not adequately address whether the superseding indictment charged each element. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant" to exercise the defendant's Fifth Amendment double jeopardy rights. *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002) (quotation omitted).

The Superseding Indictment is sufficient under Fed. R. Crim. P. 7(c)(1). For each count, the Superseding Indictment lists the charge, the statute Kuhnel is alleged to have violated, and alleges specific facts that constitute the necessary elements of each offense. (Superseding Indictment at 1-4.) The specificity of the facts is sufficient to inform Kuhnel of what acts constitute the charges and to provide him with sufficient protection against

double jeopardy. The Superseding Indictment also provides a thorough description of the images Kuhnel allegedly received or possessed, on the date(s) or range of dates he allegedly received or possessed them, and the actions that make such receipt and possession illegal. (*Id.*)

Still Kuhnel says he wants more from the Government. He claims it is unclear "what the essential elements are in the statute the defendant is alleged to have violated." (Def.'s Objs. to R&R at 11.) Yet in the same paragraph Kuhnel acknowledges that he "clearly broke down all essential elements" in his initial motion. (*Id.*) Kuhnel then claims the indictment is insufficient because it does not include specific facts describing how he knowingly received such images or describing the "interstate nexus." (*Id.*) This is role of the trial, not an indictment. *Cf. United States v. Furukawa*, No. 06-145 (DSD/AJB), 2006 WL 3330726, at *5 (D. Minn. Nov. 16, 2006).

Kuhnel also complains that the Superseding Indictment uses the language of the statute for some of the elements. "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (quotations omitted). The indictment here contains the facts and circumstances necessary to inform him of the specific offenses. (Superseding Indictment at 1–4.) The Superseding Indictment meets the requirements of Rule 7 and is specific enough to inform Kuhnel of the charges against him and to protect him from double jeopardy.

### 3. Multiplicitous Counts and Double Jeopardy

Finally, Kuhnel argues the Magistrate Judge erred in finding the Superseding Indictment does not contain multiplicitous counts and, thus, does not violate Kuhnel's Fifth Amendment protection against double jeopardy.

"To prove a double jeopardy violation, a defendant must demonstrate that he was convicted of two offenses that are in law and fact the same offense." *United States v. Zavesky*, 839 F.3d 688, 695 (8th Cir. 2016). "If the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *United States v. Harvey*, 829 F.3d 586, 590 (8th Cir. 2016). "Convictions for both possession and receipt of the same image violate the double jeopardy clause." *Zavesky*, 839 F.3d at 695. "That is to say that proof of receipt of child pornography necessarily includes proof of possession of child pornography." *United States v. Morrissey*, 895 F.3d 541, 548 (8th Cir. 2018). "While the government is not prohibited from charging [a defendant] with both a greater and lesser offense, the jury must be instructed that they cannot convict [a defendant] for both offenses based on the same facts." *Id.*

First, as the R&R noted, Counts 1–6 and 9 charge Kuhnel with receiving different images under 18 U.S.C. §§ 2252(a)(2) and (b)(1). Because the United States will need to prove different facts to gain a conviction on each of these counts, they are not multiplicitous. *United States v. Burman*, 666 F.3d 1113, 1117 (8th Cir. 2012) (noting that counts that include different images are not duplicitous under § 2252(a)(2) because they rely on different facts). Second, although counts 7 and 8 charge Kuhnel with receiving the same image, they charge Kuhnel with receiving the same image on a different day. The

government must therefore also prove different facts to gain a conviction on Counts 7 and 8.[6]

Kuhnel's specific objection to the R&R also fails. Kuhnel appears to argue that Counts 10 and 11—the two possession charges—are duplicative under *United States v. Harvey* and *United States v. Emly*, 747 F.3d 974 (8th Cir. 2014).

*Harvey*, however, applies only to situations in which the defendant is charged with possession and receipt of the same image under different statutes. *Compare* 829 F.3d at 590–91, *with United States v. Richardson*, No. 13-CR-686, 2018 WL 3533321, at *2 (N.D. Ill. July 23, 2018) ("[U]nlike *Harvey*—the images and/or videos that form the bases of the receipt and possession counts are different. Accordingly, Counts One and Two cannot be considered the same crime.") Here, the indictment clearly charges Kuhnel with receipt and possession of different images. (Superseding Indictment at 2–4.)

*Emly* holds that a defendant cannot be charged with multiple counts of possession under § 2252(a)(4)(B) if those same files are found in different locations. *See* 747 F.3d at 979 ("The act of copying or transferring files onto different devices in itself does not constitute an independent violation of the statute."). The United States is not charging Kuhnel with multiple counts of possession based on the same files found on a different device or in a different location. Instead, it is charging Kuhnel with two counts of possession based on his possession of different images.

---

[6] Kuhnel argues in a separately filed motion (Docket No. 227) that Counts 2–9 are mulitiplicitous under a "mass download" theory. The Court will deny that motion for the reasons discussed here in addition to the reasons discussed below.

Both *Harvey* and *Emly* are inapplicable and the Court will overrule Kuhnel's objections.

### C. Conclusion Regarding R&R

In sum, the Court will overrule Kuhnel's objections, adopt the R&R, and deny Kuhnel's Motion to Suppress Examiner Report #3 and Kuhnel's Motion to Dismiss the Indictment for Insufficiency.

## III. MOTION TO DISMISS FOR MISCONDUCT (Docket No. 217.)

Kuhnel argues that the United States engaged in outrageous misconduct due to its alleged interference with Wold. The Eighth Circuit has applied a three-part test to determine if there is a colorable claim of interference with attorney-client and similar relationships: "(1) the government's objective awareness of an ongoing, personal attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice." *United States v. Williams*, 720 F.3d 674, 686 (8th Cir. 2013) (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3rd Cir. 1996)).

The Government's conduct in this case does not rise to the "quite high" level that "shock[s] the conscience of the court" to find outrageous government misconduct. *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993) (quoting *United States v. Jacobson*, 916 F2d 467, 469 (8th Cir. 1990)). It is true there that Wold was acting as an agent assisting in Kuhnel's defense, thus appearing to satisfy the first element of the three-part test. For the same reasons discussed above, however, the evidence does not support finding that the United States deliberately intruded by compelling Wold to disclose privileged information.

And even if it had, because the Court finds the inevitable discovery doctrine applies, Kuhnel did not suffer any actual or substantial prejudice. Therefore, the Court finds that the government did not engage in outrageous misconduct and will deny Kuhnel's Motion to Dismiss for Government Misconduct.

## IV. MOTION TO DISMISS FOR VINDICTIVE PROSECUTION (Docket No. 218.)

Kuhnel argues that the charges against him should be dismissed based on vindictive prosecution.[7] "Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015). Such prosecution constitutes a violation of due process." *Id.* "The defendant's evidentiary burden is a heavy one" and the Court must be "mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015) (quoting *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004)).

A defendant may prove vindictive prosecution by either: (1) presenting "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges;" or (2) "in *rare* instances, rely upon a presumption of vindictiveness . . . if [the defendant] provides sufficient evidence to show a reasonable

---

[7] Kuhnel requested permission to file an out-of-time supplemental brief on this matter. (Def.'s Mot. to File Supp. Brief, Nov. 7, 2019, Docket No. 248.) The Court previously denied Kuhnel's requests to file similar supplemental briefings. (Order, Oct. 31, 2019, Docket No. 243.) The Court will also deny Kuhnel's request here. In doing so, however, the Court notes that even if the Court had considered the supplemental briefing, the ultimate outcome would not have changed as Kuhnel largely repeats arguments from his initial motion.

likelihood of vindictiveness exists." *Id.* (emphasis in original) (internal quotations omitted). "To determine whether the presumption of vindictiveness applies, the [C]ourt must examine the prosecutor's actions in the context of the entire proceedings." *Id.* at 880 (internal quotations omitted).

Kuhnel argues that the United States filed the Superseding Indictment against him to punish him for his decision to proceed pro se and take his case to trial. Kuhnel presents no objective evidence and instead appears to rely primarily on the timing of the Superseding Indictment in an attempt to create a presumption of vindictive prosecution. (*Id.*) However, "timing alone is insufficient to trigger the presumption of vindictiveness." *Williams*, 793 F.3d at 963. The Court will therefore deny Kuhnel's Motion to Dismiss for Vindictive Prosecution.

## V.     MOTION TO RECONSIDER AND CONTINUE TRIAL (Docket No. 219.)

Kuhnel argues the Court should reconsider the issue of suppression of evidence seized without a warrant and grant a continuance of trial until the issue can be relitigated. The Court previously denied Kuhnel's Motion to Suppress in January 2018. (Mem. Op. & Order, Jan. 19, 2018, Docket No. 48.) Kuhnel now seeks reconsideration based primarily on alleged inconsistent statements made by Officer James during a detention hearing held on May 6, 2019. Kuhnel also appears to argue that the Court should grant this motion due to ineffective assistance of counsel by Kuhnel's former attorney during the suppression hearing.

"[M]otions to reconsider are 'a well-established procedural rule for criminal, as well as civil, litigation.'" *United States v. Grant*, 703 F.3d 427, 434 (8th Cir. 2013) (Riley, C.J.,

dissenting) (quoting *United States v. Healy*, 376 U.S. 75, 80 (1964)).  When considering motions to reconsider in the criminal context, courts ordinarily apply the same standards as those used in civil cases.  *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) ("The Justices have concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits.").  Like a Rule 59(e) motion in the civil context, a motion to reconsider should only be employed to "afford an opportunity for relief in extraordinary circumstances" and should not be granted to simply relitigate old issues.  *Dale & Selby Superette & Deli v. U.S. Dep't of Agric.*, 838 F. Supp. 1346, 1347–48 (D. Minn. 1993).

The Court finds no extraordinary circumstances that warrant reconsideration.  Kuhnel argues Officer James made inconsistent statements during the May 6, 2019 detention hearing but fails to point to any general or specific statements—or even topics of statements—that Kuhnel believes are inconsistent.  Even so, the Court reviewed the transcripts of both the May 6, 2019 detention hearing and the September 14, 2017 suppression hearing and found no inconsistencies that warrant reconsideration.[8]

Kuhnel also provides one vaguely worded argument alleging his previous attorney's representation during the 2017 suppression hearing was ineffective.  Kuhnel does not point to any specific actions his attorney took or failed to take that warrant reconsideration.

---

[8] During the 2017 suppression hearing, Officer James stated that Kuhnel did not have permission to use Craigslist or Facebook, but later clarifies that Kuhnel only had permission to use Craigslist with prior approval, and approval would only be granted for specific reasons.  (Pretrial Mot. Hr'g Tr. at 21:19–23, 63:10–15, Sept. 28, 2017, Docket No. 35.)  It is not clear if Kuhnel is arguing that this statement warrants reconsideration, but it does not compel reconsideration because is consistent with what Officer James stated during the May 6, 2019 detention hearing.  (SEALED Detention Hr'g Tr. at 42:20–43:19, Nov. 1, 2019, Docket No. 247.)

Instead, the Court reads Kuhnel's Motion as an attempt to relitigate old issues. The Court will therefore deny Kuhnel's motion to reconsider.

## VI.    MOTION IN LIMINE TO PRECLUDE EVIDENCE (Docket No. 226.)

Prior to the Court granting a continuance of trial until January 6, 2020, Kuhnel filed his Motion in Limine. (Def.'s Mot. in Lim., Sept. 20, 2019, Docket No. 226.) The United States responded to Kuhnel's previously filed Motion in Limine. (Omnibus Resp. at 9–11, Oct. 25, 2019, Docket No. 241.) Because the deadline for the parties to file and respond to respective motions in limine based on the January 6, 2020 trial date have not yet passed, the Court will not rule on Kuhnel's previously filed Motion in Limine at this time. *See* (Order Granting Adjustment of Deadlines at 2, Oct. 15, 2019, Docket No. 237.)

## VII.   MOTION TO INSPECT EVIDENCE (Docket No. 236.)

Kuhnel requests the Court to order the United States to allow Kuhnel to inspect certain evidence. Specifically, Kuhnel requests (1) installs of Newsleecher 7.10 and Forte build 32.1272; (2) copies of files from two directories after "a fresh install of the HP laptop" that "have not been touched by [case agent] Dale Hansen"; (3) a software install of a program called Quickpar; (4) the opportunity to "forensically examine the seized HP laptop himself" with only standby counsel present; (5) the ability to create "examiner reports" to present as exhibits at trial; and (6) a USB drive with exhibits taken from the laptop, which can be inspected by the Government, provided that the inspecting agent "must not dwell on the subject matter of the screen shots." (Def.'s Mot. to Inspect Evidence at 3.)

The United States responds, noting it will provide Kuhnel with install files of Newsleecher 7.10 and Forte Build 32.1272. Further, the United States does not object to Kuhnel's request for an install of Quickpar but notes it does not have this program and defendant will need to procure it himself. The United States objects to the balance of Kuhnel's Motion, arguing his requests do not comply with the law and risk compromising the integrity and security of the HP laptop, which contains most of the evidence in this case. The United States instead proposes an examination that, it argues, comply with the law and protect the integrity and security of the evidence.

18 U.S.C. § 3509(m) sets limitations on defendants' access to certain evidence, in order to prevent the reproduction of child pornography, and states:

> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.

> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.

> (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

The Court notes that Kuhnel mailed this Motion prior to the Court granting his motion for an additional expert, which likely resolved much of Kuhnel's requests. (*Ex*

*Parte* Order, Oct. 10, 2019, Docket No. 235.)  Moreover, the position of the United States is reasonable and largely compliant with Kuhnel's requests.  Even without this Order, then, the Court finds the United States made the evidence "reasonably available to the defendant" pursuant to § 3509(m)(2)(B).  To the extent that this Motion is not already moot, the Court agrees with the United States and will order a defense examination of a forensic copy of the HP Pavilion laptop consistent with the procedures the United States set forth in their response.  (*See* Gov't Pretrial Mot. Resp. at 11–16.)

## VIII. DENIAL OF DEFENDANT'S MOTION TO DISMISS COUNTS AS MULTIPLICITOUS (Docket No. 227.)

Kuhnel moves to dismiss Counts 2–9 as multiplicitous.[9]  Kuhnel argues that because the indictment does not list the exact time of day each file was downloaded, each separate image could have been downloaded at the same time via a "mass download . . . spanning days or months."  (Def.'s Mot. to Dismiss Counts 2–9 at 1.)

Kuhnel's argument fails for several reasons.  First, as already discussed above, Counts 2–9 are not multiplicitous.  Second, the Court's reading of § 2252(a)(2) does not support Kuhnel's "mass download" theory.  Section 2252(a)(2) prohibits the knowing receipt of "any visual depiction" of child pornography.  18 U.S.C. 2252(a)(2).  As the

---

[9] In Kuhnel's initial Motion, he lists counts 2–9.  (Docket No. 227.)  In two related motions, filed after the deadline for pretrial motions, Kuhnel alternates from seeking dismissal of Counts 2–7 and Counts 2–9.  (*See* Def.'s Am. Mot. Dismiss Counts at 1, Oct. 15, 2019, Docket No. 239); (Supp. Briefing, Oct. 31, 2019, Docket No. 244.)  Because Kuhnel's only motion listing Count's 2–7 was filed out-of-time and the Court previously denied Kuhnel's request to file both out-of-time motions (Order, Oct. 31, 2019, Docket No. 243) the Court reads Kuhnel as requesting dismissal of Count's 2–9 per his initial motion. (Docket No. 227.)

Eighth Circuit noted in *Emly*, the word "any" shows Congress's intent to "permit[] a separate count for each type of material or storage device possessed." *Emly*, 747 F.3d at 977–78 (citing *United States v. Hinkeldey*, 626 F.3d 1010, 1013 (8ᵗʰ Cir. 2010)). While Counts 2–9 deal with receipt under § 2252(a)(2), and *Emly* dealt possession under § 2252A(a)(5)(B), *Emly* supports the Court's reading of § 2252(a)(2) allowing multiple counts of receipt for multiple images received. Third, even if § 2252(a)(2) supported Kuhnel's "mass download" theory, the United States argues the evidence presented at trial will show that Kuhnel did not conduct a mass download for the images referenced in Counts 2–9. For all the reasons listed above, the Court will deny Kuhnel's Motion to dismiss Counts 2–9.

## IX.    MOTION FOR IMPEACHING MATTER (Docket No. 205.)

Kuhnel makes 13 requests for various materials, some of which fall within the scope of materials the United States must disclose under either the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972) and some of which do not. The United States notes that it has or will disclose what it is required to disclose under the Constitution and applicable law. (Gov't Resp. to Impeaching Matter, Sept. 18, 2019, Docket No. 223.) The United States also points out that the Magistrate Judge issued an Order on discovery over two years ago ordering the United States to continue meeting its disclosure obligations. (Order on Discovery at 3, Sept. 15, 2017, Docket No. 32.) Since that time, Kuhnel has not argued the United States has failed to meet its obligations and does not argue so here. The United States objects to Kuhnel's disclosures to the extent they "reach beyond the requirements of the Jencks Act, *Giglio*,

*Brady*, and their progeny" and urges the Court to deny Kuhnel's Motion. (Gov't Resp. to Impeaching Matter at 3.)

The Court agrees with the United States and will deny Kuhnel's Motion to the extent Kuhnel's requests fall outside the United States' obligations under the Jencks Act, *Brady*, *Giglio*, and their progeny. Requests 1 and 2 appear to only seek *Brady* or *Giglio* information. The United States has stated it is aware of its obligations under *Brady* and *Giglio* and, as noted above, was previously ordered to continue complying with *Brady* and *Giglio*. The Court is satisfied with this response and will deny requests 1 and 2 to the extent they seek more information than required under the Jencks Act, *Brady*, or *Giglio*.

In requests 3 and 4, Kuhnel seeks information relating to any witnesses' prior felonies or bad acts not resulting in criminal convictions. The United States notes that it has informed Kuhnel that it ran criminal-history queries with respect to each of the lay witnesses it intends to call and has nothing to disclose. The Court is satisfied with this response and will deny Kuhnel's motion to the extent it seeks more.

In requests 5, 6, and 7, Kuhnel seeks disclosures of any threats the United States made against any potential witness to coerce them into testifying. The United States does not address this claim specifically. The Court, however, finds Kuhnel's request for this information, at this point, to be a "thinly-disguised attempt to learn through discovery who the government was likely to call as trial witnesses." *United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012). While the United States must disclose this information to Kuhnel, it need only do so prior to cross-examination to comply with *Brady*. *Id.* The United States has stated it is aware of its obligations under applicable law and intends to comply. The

Court is satisfied with this response and therefore will deny Kuhnel's request to the extent it seeks more than is required under the Jencks Act, *Brady*, or *Giglio*.

In requests 8 and 9, Kuhnel seeks disclosure of prior official statements made by any witness that relate to this matter, and, also, prior testimony of any "informer, accomplice, co-conspirator, or expert" witness that has "testified before any Court, Grand Jury, or other tribunal" in related and unrelated matters. (Def.'s Mot. for Impeaching Matter at 3–4.) The United States notes that it has provided Kuhnel with required transcripts of hearings it requested before the Court and the grand jury in this case. The United States also notes that prior public testimony does not fall within *Brady* or the Jencks Act and the United States is not required to disclose it to Kuhnel. *See, e.g.*, *United States v. Albanese*, 195 F.3d 389, 393 (8th Cir. 1999) ("Bartels gave his prior testimony at a public proceeding, so the Government's failure to turn over a transcript of Bartels' prior testimony violated neither *Brady v. Maryland*, 373 U.S. 83, 87 (1963), nor the Jencks Act, 18 U.S.C. § 3500 (1994)."). The Court is satisfied with the United States' response and will deny Kuhnel's request to the extent it seeks more than is required under the Jencks Act, *Brady*, or *Giglio*.

In request 10, Kuhnel seeks production of personnel and confidential files of potential law-enforcement witnesses. The United States is not required to "to peruse the personnel files of each of the witnesses in search of possible *Brady* material." *United States v. Scott*, No. 3:08-CR-00057-JAJ, 2009 WL 10697517, at *1 (S.D. Iowa Jan. 28, 2009), *aff'd*, 610 F.3d 1009 (8th Cir. 2010). The Court will therefore deny Kuhnel's request to the extent it seeks more than is required under the Jencks Act, *Brady*, or *Giglio*.

In requests 11 and 12, Kuhnel demands all other information that could be helpful or useful to the defense in impeaching witnesses, including potential information that goes to the competency of the witness. (Def.'s Mot. for Impeaching Matter at 5–6) (noting that Kuhnel is seeking, *inter alia*, information about whether any of the witnesses harbor bias against him, have been hypnotized, or have been subjected to "truth serum".) The United States argues that many of Kuhnel's requests are topics for Kuhnel to inquire about on cross-examination if a reasonable belief that such concerns exist. The Court agrees with the United States and will deny Kuhnel's motion to the extent it seeks more information than is required under the Jencks Act, *Brady*, and *Giglio*.

In request 13, Kuhnel seeks the same information as requested above, but from all nonwitness declarants whose statements are offered into evidence. The United States makes the same objections as listed above and notes that Kuhnel may challenge any hearsay statements during trial. (Gov't Response to Impeaching Matter at 3.) For the reasons discussed above, the Court will deny Kuhnel's motion to the extent he requests more than is required under the Jencks Act, *Brady*, and *Giglio*.

## X.    REMAINING MISCELLANEOUS MOTIONS

Kuhnel has also requested disclosure of witnesses (Def.'s Mot. to Disclose Witnesses, Sept. 9, 2019, Docket No. 202) and leave to file an out-of-time supplemental brief related to his Motion to Dismiss for Vindictive Prosecution. (Mot. for Suppl. Brief, Nov. 7, 2019, Docket No. 248.)

Regarding Kuhnel's Motion for a Witness List, the United States notes it intends to comply with the Court's prior order and will file its lay and law-enforcement witness list

at the appropriate time.  (Gov't Resp. at 2, Sept. 11, 2019, Docket No. 204.)  To the extent Kuhnel's Motion requests more than what the Court has already ordered, the Court will deny Kuhnel's Motion.

Regarding Kuhnel's Motion to File an Out-of-Time Supplemental Brief, the Court will also deny Kuhnel's Motion.  The Court does not need a supplemental brief on this matter and Kuhnel was well aware of the filing deadline for pretrial motions.  Kuhnel, proceeding pro se, may not blame his delays on a lack of outside assistance, because it is clear to the Court that Kuhnel never lacked the "minimal help necessary." *Bear v. Fayram*, 650 F.3d 1120, 1125 (8th Cir. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 360 (1996)).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for a List of Witnesses [Docket No. 202] is **DENIED** to the extent it seeks more information or earlier disclosure of witnesses than the Court has previously ordered;

2. Defendant's Motion for Impeaching Matter [Docket No. 205] is **DENIED** to the extent it seeks disclosure of more information than is required under the Jencks Act, *Brady*, and *Giglio*;

3. Defendant's Objections to the Report and Recommendation [Docket No. 206] are **OVERRULED, t**he Magistrate Judge's Report and Recommendation [Docket No. 199] is **ADOPTED**, and Defendant's

Motions to Suppress Examiner Report #3 [Docket No. 134] and to Dismiss the Indictment for Insufficiency [Docket No. 149] are **DENIED**;

4.     Defendant's Motions to Dismiss [Docket Nos. 217, 218, and 227], Motion to Reconsider [Docket No. 219], Amended Motion to Dismiss [Docket No. 239], and Motion to File a Supplemental Brief [Docket No. 248] are **DENIED**;

5.     Defendant's Motion to Inspect Evidence [Docket No. 236] is **GRANTED in part and DENIED in part**.  The Court grants Kuhnel's motion to the extent it is not already moot so long as it complies with the procedures laid out in the United States Omnibus Response to Pretrial Motions [Docket No. 241] pages 11–16;

6.     The United States' Motion for Leave to File an Out-of-Time and Overlength Response [Docket No. 229] is **GRANTED**.

7.     Since Kuhnel is proceeding pro se, the Government is ordered to provide all necessary disclosures at the earliest possible time.

DATED:  December 12, 2019
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court